UNITED STATES DISTRICT COURT
SOTHERN DISTRICT OF NEW YORK

---

CITIGROUP GLOBAL MARKETS INC.,

                 Plaintiff,

v.

ABDULLAH MAHMOUD ABBAR, GHAZI ABDULLAH ABBAR, AJIAL LEVERAGED FEEDER HOLDINGS LIMITED, AMATRA LEVERAGED FEEDER HOLDINGS, LIMITED, AMAVEST HOLDINGS LIMITED, and GAMA INVESTMENT HOLDINGS LIMITED,

                 Defendants.

Case No. 11 Civ. 06993

---

### DECLARATION OF SAMIR MATHUR IN SUPPORT OF CITIGROUP GLOBAL MARKETS INC.'S MOTION FOR A PRELIMINARY INJUNCTION

    I, Samir Mathur, hereby declare as follows:

**Background**

    1.    I am currently a Managing Director at Citigroup Global Markets Inc. ("CGMI"), a New York-based broker-dealer. All facts set forth in this Declaration are based on my personal knowledge and my review of relevant documents. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

    2.    I have been employed by CGMI or its predecessors since 1993.

    3.    The Global Hybrids Group is segmented among trading and structuring functions. Since 2000, I have been the head trader on the Global Hybrids trading desk (the "Desk").

    4.    The Desk has operations in New York, New York and in London, England. The members of the Desk who work in New York are employees of CGMI, and the

members of the Desk who work in London are employees of Citigroup Global Markets Limited ("CGML").

5. At all relevant times, I reported to Richard Burns, who was the head of the Global Hybrids Group. Mr. Burns was located in London. He was an employee of CGML.

6. Rajiv Sennar, who worked as a structurer on the Option Trades (discussed below), reported to Erwin Parviz. Mr. Parviz was the head of Global Structuring. Mr. Parviz was located in London. He was an employee of CGML.

7. CGML is a United Kingdom-based broker-dealer.

8. CGMI is party to a services agreement with, among others CGML. Under this agreement, CGMI provides services to CGML.

9. It is common for CGMI employees on the Desk to provide services to CGML. For example, CGMI employees maintain trade ledgers or "books" in which they record trades executed by CGML. CGMI employees also manage trading positions for CGML intended to hedge CGML's risk under derivative transactions (such as the Option Trades (defined below)) entered into by CGML.

**The Option Trades**

10. I have reviewed the Statement of Claim filed by the Claimants in the FINRA matter titled *Abdullah Mahmoud Abbar v. Citigroup Global Markets Inc.* (the "FINRA Arbitration"). I am familiar with the option trades referred to in the Statement of Claim as the "Hedge Fund Transaction" (the "Option Trades") because I was the head trader on the Desk at the time of that transaction. I also executed the confirmations setting forth the terms of the Option Trades (the "Confirmations") on behalf of CGML.

11. I was provided with a power of attorney to act on behalf of CGML for the Option Trades. A true and correct copy of that power of attorney is attached as Exhibit A to this declaration. By that power of attorney, CGML provided me with the authority to, among other things, sign and execute documents, including contracts and agreements "in connection with the Ajial and Amatra transactions dated on or about 9 and 10 May 2006."

12. Pursuant to that power of attorney, I executed the following documents on behalf of CGML: (i) the Confirmations (attached hereto as Exhibits B and C); (ii) letter agreements, dated May 11, 2006, setting forth the Structuring Services that CGML would offer in relation to the Option Trades (attached hereto as Exhibits D and E); and (iii) risk disclosure letters, dated May 9, 2006, setting forth the risks of the Option Trades (attached hereto as Exhibit F and G).

13. An amendment to each of the Confirmations was signed in April 2007, by Richard Burns on behalf of CGML (attached hereto as Exhibits H and I).

14. The purpose of the Option Trades was to provide certain of the Claimants with additional leverage to increase their hedge fund exposure (and, as a result, their potential returns).

15. In return for payment of a premium to CGML, the Claimants received the upside investment performance of the portfolio above a pre-agreed strike price. The Claimants' risk of loss under the Option Trades was limited to the premium paid; any additional losses were at the risk of CGML.

16. To hedge the exposure created by the Option Trades, CGML became the legal and beneficial owner of the Abbars' then-existing portfolio of hedge fund assets plus the hedge fund assets purchased with the proceeds of the trades.

17. Although I was not involved in structuring the Option Trades, I understand (based on my discussions with the structuring team and my review of the transactional documents attached to my declaration) that prior to the consummation of the Option Trades, Claimants held their hedge fund assets in two funds: Ajial Holdings Limited and Amatra Investments Limited (together, the "Reference Funds"). To consummate the Options Trades, the Abbars created two new entities (defendants Amatra Leveraged Feeder Holdings Limited and Ajial Leveraged Feeder Holdings Limited) (together, the "Feeder Funds")), which, in turn, entered into the Option Trades with CGML.

18. It was CGML (not CGMI) that entered into the Option Trades with the Feeder Funds. The Option Trades were each governed by a Confirmation, each of which was between a Feeder Fund and CGML. (Exs. B and C.)

19. To hedge its exposure on the Option Trades, CGML subscribed for the "participating" shares of the Reference Funds. The participating shares gave CGML the right to all of the economic value of the Reference Funds.

20. CGMI held the "ordinary" shares of the Reference Funds. CGMI exercised its rights as holder of the ordinary shares of the Reference Funds solely for the purpose of protecting CGML from investment risk. CGMI did so by approving, on behalf of the Reference Funds, any investments that Ghazi Abbar—the investment advisor for the Reference Funds—recommended.

21. Although CGMI employees may have been involved in this function, they were only acting to protect CGML's economic position.

22. Based on my understanding, I believe that the Global Hybrids Group always intended that CGML would be the counterparty to the Option Trades. Indeed, no transactions involving the option structure at issue here have been booked in CGMI by the Desk.

23. CGML booked the Option Trades, and any profit or loss associated with the Option Trades appeared on CGML's books.

24. The Statement of Claim make a number of allegations concerning CGMI taking steps to "haircut" certain investments held by the Reference Funds. But it was CGML that acted as the "Calculation Agent" under the terms of the Option Trades. As Calculation Agent, CGML valued the underlying hedge fund assets held by the Reference Funds and adjusted those values on a periodic basis in accordance with the terms of the Confirmations. CGML did so to protect its position. Any CGMI employee involved in this function would have been doing so pursuant to arrangements which involve them acting on behalf of CGML, either pursuant to a power of attorney or pursuant to the services agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 3, 2011

_____
Samir Mathur

RODD CORNER
Notary Public - State of New York
No. 01CO6169041
Qualified in New York County
My Commission Expires June 18, 2015